UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSES LEE PORTER,

     Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Civil Action No. 13-10707

HON. TERRENCE G. BERG
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Moses Lee Porter ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On August 25, 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of July 6, 2007 (Tr. 127-133, 134-136). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on October 26, 2010 in Livonia, Michigan before Administrative Law Judge ("ALJ") Donald G. D'Amato (Tr. 43). Plaintiff,

-1-

represented by John Thomasick, testified, as did Vocational Expert ("VE") John Stokes (Tr. 47-71, 72-79).  On November 18, 2010, ALJ  D'Amato found that Plaintiff was not disabled (Tr. 34).  On December 20, 2012, the Appeals Council denied review (Tr. 1-4).  Plaintiff filed for judicial review in this Court on February 19, 2013.

## BACKGROUND FACTS

Plaintiff, born August 7, 1968, was 42 when the ALJ issued his decision  (Tr. 33, 127).  His application states that he obtained a GED in 2006 (Tr. 184) and worked previously as a baker, cook, dishwasher, food server, lawn care worker, machine operator, maintenance worker, and porter (Tr. 178).  He alleges disability as a result of arthritis of the right hand, flat feet, a left shoulder rotator cuff injury, and migraine headaches (Tr. 177).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced the testimony by noting that her client did not obtain a GED, but instead, had a 10th grade education* (Tr. 47-48).

Plaintiff then offered the following testimony:

He had not worked since being laid off in July, 2007 (Tr. 48).  He was disabled as a result of a left shoulder dislocation (Tr. 48).  He underwent shoulder surgery in November, 2009 (Tr. 48).  He also underwent bilateral carpal tunnel release and was currently using wrist braces (Tr. 48-49).  He experienced hypertension, migraine headaches, a depressive disorder, and a heart ventricle condition (Tr. 49).  He had received treatment for depression since 2010 (Tr. 49).  He was not aware of the heart condition until being informed by a physician (Tr. 49).  As a result of the condition, he experienced shortness of breath and currently took Toprol (Tr. 50).

Plaintiff did not have problems sitting but experienced limitations in standing and walking due to foot pain (Tr. 51).  He was unable to walk for more than one block at a time

(Tr. 51).  Despite the left shoulder procedure and carpal tunnel release, he continued to experience problems in lifting and grasping (Tr. 52-53).  He experienced difficulty grasping a pen and writing for more than a couple of sentences (Tr. 53).

Plaintiff did not experience problems bending (Tr. 52).  He was able to reach forward with his left shoulder but was unable to reach overhead (Tr. 52).   He experienced level "eight-and-a-half" pain on a scale of one to ten but level "four to five" after taking medication (Tr. 53).  He first sought treatment for depression in 2010 (Tr. 54).   The depression was triggered by his late mother's final illness and job problems (Tr. 54-55).  His bouts of depression were characterized by sadness, social isolation, and loss of appetite (Tr. 55).  He did not experience difficulty in casual interactions with others (Tr. 55).

Plaintiff last worked in 2008 (Tr. 56).  The job as a general laborer required him to lift up to 25 pounds each day, climb trees, pour cement, and build decks (Tr. 56).   Pain required him to sit down "a whole lot" over the course of a work day, despite the job requirement to stay on his feet most of the time (Tr. 56).  He was terminated from the position because  hand, shoulder and foot problems prevented him from filling the job requirements (Tr. 57-58).  He experienced level "eight" pain while working as a laborer (Tr. 58).  He was currently unable to lift even a gallon of milk or use a hammer, saw, or vibrating tools (Tr. 57, 59).

Prior to working as a general laborer, Plaintiff worked as a cook (Tr. 60).  He was terminated when the restaurant closed in 2007 (Tr. 60).  The job required him to lift boxes weighing 30 pounds and cut fish and steaks (Tr. 61).  He was required to stand for extended periods but obtained relief from over-the-counter pain medication (Tr. 61).  At the time, he was already experiencing shoulder and hand pain (Tr. 62).  He would be unable to resume the cooking position due mostly to hand pain (Tr. 62).

-3-

Prior to working as a cook, Plaintiff worked as a cleaner, requiring him to clean, dust, mop floors, vacuum, and stock shelves (Tr. 63). He would be unable to resume the cleaning position due to shoulder, hand, and foot pain (Tr. 64). Prior to the cleaning job, he worked for a non-profit organization wheeling a food cart to elderly patients (Tr. 65). The job required overhead reaching and lifting of up to 15 pounds (Tr. 66). He would be unable to resume the job because of difficulty lifting, gripping, and standing (Tr. 66).

Plaintiff lived with his father in a single-family home (Tr. 66-67). He relied on his father to perform all of the indoor and yard work (Tr. 67). He relied on his girlfriend to help him with personal care tasks (Tr. 68). He experienced sleep disturbances as a result of hand and shoulder pain (Tr. 69).

### B.    Medical Evidence[1]

### 1.    Treating Sources

In August, 2009, Plaintiff sought emergency treatment on multiple occasions for headaches accompanied by nausea (Tr. 231). CT scans of the head were unremarkable (Tr. 232, 337, 467). He declined a recommendation to undergo a spinal tap but asked for pain medication (Tr. 232). He appeared fully oriented with a normal mood and affect (Tr. 251). He was diagnosed with migraine headaches (Tr. 251-252).

The following month, an MRI of the left shoulder showed advanced osteoarthritic changes and a rotator cuff tear (Tr. 292). Also in September, 2009, neurologist Martin I. Belkin, D.O. prescribed Topomax for nighttime use and Imitrex to be taken at the onset of a migraine headache (Tr. 324-325). He observed a normal gait and station (Tr. 324, 484). Plaintiff denied current depression or anxiety (Tr. 342). The following month, Paul S.

---

[1]Conditions unrelated to the benefit claim, reviewed in full, have been omitted from the present discussion.

Shapiro, M.D. noted positive Tinel's and Phalen's signs in both wrists consistent with a diagnosis of carpal tunnel syndrome and degenerative osteoarthritic changes of the right thumb (Tr. 333, 494). Plaintiff underwent arthroscopic decompression of the left shoulder in November, 2009 (Tr. 284-286, 331-332, 491-493). Orthopedic surgeon Joseph H. Guettler remarked that Plaintiff could "hopefully be . . . afforded some time and relief by [the] procedure but . . . would certainly be a candidate for a shoulder arthroplasty in the future" (Tr. 286). The same month, a nerve conduction study showed the presence of "mild" bilateral carpal tunnel syndrome (Tr. 294, 401). The following month, Plaintiff was advised to perform home exercises designed to improve his shoulder condition (Tr. 409, 490).

January, 2010 postoperative records by Dr. Guettler state that Plaintiff was able to elevate his shoulder 90 degrees (Tr. 402). Dr. Guettler noted that Plaintiff had been "non-compliant" with recommendations for home exercise (Tr. 402). A February, 2010 MRI of the brain showed no abnormalities (Tr. 328). The same month, Plaintiff sought psychiatric help for depression (Tr. 362). He reported sleep disturbances and feelings of hopelessness about the future (Tr. 363). He noted that he was on probation for an assault conviction (Tr. 367). He was assigned a GAF of 48[2] (Tr. 367).

In March, 2010, Dr. Guettler reiterated the importance of home exercises and physical therapy (Tr. 279). He observed that Plaintiff performed the home exercises in "limited manner" (Tr. 279). Dr. Guettler's notes state that he "seriously question[ed] [Plaintiff's] motivation at this stage of the game," noting that Plaintiff was "most interested in an off work note and pain pills" (Tr. 279). Common Ground records from the same month state that

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

Plaintiff was feeling "better" (Tr. 372).  He was re-prescribed Seroquel, but advised against overuse (Tr. 373-374).  The following month, an echocariogram showed "mild" left ventricular enlargement but no other abnormalities (Tr. 307-308, 398).  Dr. Shapiro's notes state that Plaintiff opted to proceed with left carpal tunnel release (Tr. 391, 397).  May, 2010 treating notes state that Plaintiff did not report symptoms following the left carpal tunnel release (Tr. 309-310).

In June, 2010, Mohammed Yousuf, M.D. performed a psychiatric intake examination, noting Plaintiff's reports of depression (Tr. 269).  Plaintiff reported that he was on probation (Tr. 269).  He had convictions for OUIL, domestic violence, and forgery (Tr. 269-270).  Dr. Yousuf noted a constricted affect (Tr. 270).  Plaintiff appeared fully oriented with unimpaired judgment (Tr. 270).  Dr. Yousuf assigned Plaintiff a GAF of 50, noting depression, carpal tunnel syndrome, and legal problems (Tr. 270).   The same month, Plaintiff was prescribed Xanax but "no refills" (Tr. 405).  Dr. Shapiro noted Plaintiff's continued reports of left hand pain (Tr. 408).  The same month, Dr. Shapiro opined that Plaintiff "should be hopefully able to return back to work" in six weeks (Tr. 408).

In July, 2010, Plaintiff was referred to Common Ground after a drug overdose (Tr. 343).  He denied suicidal or homicidal intent (Tr. 343). "High intensity community based" treatment was recommended (Tr. 346).  Common Ground discharge instructions state that Plaintiff experienced "situational stressors" but was otherwise capable of job retraining (Tr. 275).  Dr. Guittler's notes from the same month note good long-term results from the shoulder surgery, opining that Plaintiff was "too young" for a shoulder replacement (Tr. 410).  Dr. Guettler noted that  Plaintiff was currently "a rigorous manual laborer" but "may never be able to perform heavy manual labor" (Tr. 276, 410).  He opined that Plaintiff required some degree of work restrictions (Tr. 276, 410).

## 2.  Non-Treating Sources

In November, 2009, Atul C. Shah, M.D. performed a consultative examination of Plaintiff on behalf of the SSA, noting Plaintiff's reports of left shoulder pain for the last two to three years (Tr. 253).  Dr. Shah noted that shoulder surgery had been scheduled for the following week (Tr. 253).  He noted that Plaintiff was not in any acute distress and exhibited a normal gait and grip strength (Tr. 255).  Dr. Shah observed "severe restriction of range of motion of the left shoulder," concluding that Plaintiff had a "severe functional impairment in occupational activity because of rotator cuff tear on the left side" (Tr. 255-256).  Dr. Shah noted that the right upper extremity and lower extremities had "good functional capacity for occupational activities" (Tr. 255).  In regard to Plaintiff's allegations of bilateral hand pain, Dr. Shah remarked that an EMG report was pending (Tr. 255).

The following month, William Lockhart completed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 262).  Citing the recent medical records, Lockhart noted that recent left shoulder surgery had been performed without complications (Tr. 263).  Lockhart noted that physical therapy had been recommended (Tr. 263).  He cited recent treating records regarding Plaintiff's hand condition, noting positive Tinel's and Phalen's signs but the absence of motor deficits (Tr. 263).  He found no postural, manipulative, visual, communicative, or environmental limitations (Tr. 264-266).


## 3.  Material Submitted After the November 18, 2010 Administrative Decision

On December 20, 2012, the Appeals Council declined to make the following records part of the administrative record on the basis that they would not affect the ALJ's November

18, 2010 decision (Tr. 1-2).  The records were returned to Plaintiff's counsel (Tr. 2). Nonetheless, Plaintiff's counsel has attached these records to her present motion for Summary Judgment. *Docket #16-1.*

On January 3, 2011, Christopher Tisdel, M.D. of the Michigan International Foot & Ankle Center examined Plaintiff, noting "no evidence of acute inflammatory changes or significant swelling." Dr. Tisdel noted a positive Tinel's sign in the tarsal tunnel bilaterally and very minimal Achilles tendon and patellar tendon reflexes, but otherwise 5/5 motor activity of the bilateral lower extremities.  Muscle strength was 5/5.  Plaintiff demonstrated "a wide based antalgic gait." He noted that previous imaging studies were negative for "joint arthritis or other acute changes." He ordered nerve conduction studies, noting a likely diagnosis of "compressive neuropathy/tarsal tunnel," but declined to offer a recommendation for treatment until the study had been performed.

### C.    Vocational Expert Testimony

VE John Stokes classified Plaintiff's previous work as a machine operator as semiskilled and exertionally medium[3] (light as performed); kitchen helper, unskilled/medium; commercial cleaner, unskilled/heavy (light as performed); landscaping laborer, unskilled/heavy (medium as performed); and cook, skilled/medium (Tr. 75).   The ALJ then posed the following question, taking into account Plaintiff's age, educational level, and work experience:

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> [A]ssume an individual . . . who has the following limitations.  Who requires work which is simple and unskilled, occasionally in close proximity to co-workers and supervisors meaning that the individual can occasionally function as a member of a team.  Occasionally in direct contact with the public in a low stress environment he'll find as having only occasional changes in the work setting.  Can lift or carry 10 pounds frequently, and 15 pounds occasionally.  Can stand and or walk with normal breaks for about four hours in an eight hour workday but can do so for only a half hour at one time.  Can sit with normal breaks for a total of about six hours in an eight hour workday.  Can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions.  no overhead reaching with the upper left extremity.  Can perform . . . activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reachng for two-thirds of a workday.  Needs to avoid hazards in the workplace such as moving machinery and unprotected heights.  Needs to avoid vibrations.  Needs to be restricted to a relatively clean work environment meaning stable temperature, stable humidity and good ventilation that allows the individual to avoid concentrated exposure to dust, fumes, gases, odors and other pulmonary irritants.    And can perform each of the following postural activities occasionally, climbing stairs with handrails, balancing, stooping, crouching, kneeling and crawling but needs to avoid climbing ladders, scaffolds and ropes.  Can such an individual do claimant's past work? (Tr. 77).

The VE replied that the above-described individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of an office helper (4,100 positions in the state economy) (Tr. 77).  The VE stated that if the above limitations were amended to restrict the individual to sedentary work, the individual could perform the work of a surveillance system monitor (900) and document preparer (1,700) (Tr. 78).  The VE found that if the same individual were additionally limited by the need to be off task for at least an hour every day, or, was required to miss more than two days of work each month due to medical or psychological symptoms, all gainful employment would be precluded (Tr. 78-79).  He concluded by stating that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 79).

-9-

### D.  The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "internal derangement of left shoulder, including glenohumeral and subacromial impingements and bursitis, status post arthroscopy with debridement; bilateral carpal tunnel syndrome, status post releases; depressive disorder, not otherwise specified; hypertension; history of migraines; history of heart ventricle problems and flat feet"  that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23).  The ALJ found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 23).  He found that Plaintiff retained the residual functional capacity ("RFC"):

> [C]laimant can only lift or carry up to ten pounds frequently and up to fifteen pounds occasionally; can stand or walk (with normal breaks) for up to a total of four hours in an eight-hour workday, but can do so for only one-half hour at one time; can sit (with normal breaks) for a total of up to six hours in an eight-hour workday; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; cannot do any overhead reaching with the upper left extremity; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling a reaching for two-thirds of an eight-hour workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights; needs to avoid temperatures, stable humidity, and good ventilation that allows the claimant to avoid concentrated exposure to dusts, fumes, gases, odors, and other pulmonary irritants; can perform each of the following postural activities only occasionally: climbing stairs with handrails, balancing, stooping, crouching, kneeling, and crawling, but needs to avoid climbing ladders, scaffolds, and ropes; can only perform work that is simple and unskilled; can only occasionally be in close proximity to coworkers and supervisors (meaning that the claimant can occasionally function as a member of a team) and can only occasionally be in direct contact with the public in a 'low stress' environment, defined as having only occasional changes to work setting (Tr. 24-25).

Citing the VE's job findings, the ALJ found that although Plaintiff was unable to perform his past relevant work, he could work as an officer helper, surveillance systems monitor, and

-10-

document preparer (Tr. 33).

The ALJ discounted the allegations of disability, citing Dr. Guettler's treating records showing that Plaintiff was non-compliant with postoperative advice (Tr. 30). The ALJ also cited Dr. Shapiro's remark that Plaintiff would be able to return to work six weeks after carpal tunnel release surgery (Tr. 30). The ALJ noted that Plaintiff's limitations as a result of depression were short-lived, citing a treating source's March, 2010 statement that Plaintiff was "better" six weeks after reporting significant depressive symptoms (Tr. 31). The ALJ also cited Dr. Belkin's September, 2009 records stating that Plaintiff denied depression or anxiety (Tr. 31).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Credibility Determination

Plaintiff argues first that ALJ's credibility determination was not supported by substantial evidence.  *Plaintiff's Brief* at 10-15, *Docket #15.*  He contends, in effect, that the credibility determination is  based on the ALJ's erroneous interpretation of the record.  *Id.*

### 1. Construction/Landscaping Work Following the Alleged Onset of Disability

Plaintiff faults the ALJ for finding that the ability to perform construction work  after the alleged onset date undermined the disability claim.  *Id.* at 11 (citing Tr. 27).  He argues that he performed the job for less than a month before being terminated for his failure to meet

the exertional demands of the job (Tr. 57-58).   He argues that the failed work attempt was not substantial gainful employment and was "therefore irrelevant to the disability analysis." *Id.* at 11.

Unsuccessful work attempts, as defined by 20 CFR § 404.1574(c), pertain to failed attempts to rejoin the work force after the alleged onset of disability. See Programs Operations Manual System ("POMS") DI § 24005.001 ("When the work issue determination prepared by the [field officer] shows that the claimant engaged in [substantial gainful activity] after the alleged onset date ... but subsequently ceased ... the [field officer] will develop the facts and make a recommendation as to whether it was an unsuccessful work attempt.") (emphasis added). The primary purpose of finding that work activity occurring after the alleged onset date was an "unsuccessful work attempt" rather than substantial gainful activity, "is to provide 'an equitable means of disregarding relatively brief work attempts' that do not demonstrate sustained substantial gainful activity." *Hays v. Apfel*, 1999 WL 450902, *6 (D. Kan. May 10, 1999)(citing SSR 84–25,1984 WL 49799).

Plaintiff mixes apples and oranges in making this argument.   While he is correct that his brief 2008 construction work stint cannot be considered substantial gainful activity ("SGA"), that fact is not in dispute.   The ALJ did not find that the 2008 work constituted SGA, but instead, made a finding that Plaintiff had not engaged in SGA since July 6, 2007 (Tr. 22).   Notwithstanding the fact that the 2008 work was not SGA, the ALJ did not err in noting that Plaintiff's short-term ability to engage in work activity requiring more than 25-pound lifting stood at odds with his testimony that he was unable to lift even a gallon of milk or engage in any household chores (Tr. 27, 57-67).   *See Chmura v. Commissioner of Social Sec.,* 2012 WL 4486004, *8 (E.D.Mich.,August 28, 2012)(application for a particular job can at least be considered, along with other evidence, in assessing the credibility of [the

claimant's] claim that he is exertionally incapable of performing that job").

## 2.  Lack of Medical Treatment

Plaintiff also faults the ALJ's finding of a "'lack of medical treatment and lack of complaints'" *Plaintiff's Brief* at 11 (citing Tr. 27).  He notes that he received aggressive treatment for carpal tunnel syndrome and the shoulder condition, along with treatment for migraine headaches and depression.  *Id.*  However, in  making the argument that the ALJ misstated the record, he himself misstates the record.  In making this finding, the ALJ was referring only to the lack of medical complaints for the two-year period between the alleged onset date of July 6, 2007 and August, 2009 (Tr. 27).

Plaintiff argues additionally that his lack of treatment for the first two years of his "disability" should not be used to discredit his claims of current limitation.  *Plaintiff's Brief* at 12.  He asserts that "[i]f anything, the ALJ should have considered whether [the] disability started later than the proposed onset date, rather than simply denying all benefits."  *Id.* However, the RFC crafted by the ALJ, including limitations on walking, standing, postural and manipulative activities, along with the limitations reflecting Plaintiff's psychological conditions, amply reflects the conditions diagnosed after August, 2009 (Tr. 24-25).

## 3.  Non-Compliance With Treatment

Plaintiff also disputes the finding that the disability allegations were undermined by his non-compliance with treatment recommendations.  *Plaintiff's Brief* at 12-13.  Plaintiff notes that his failure to attend physical therapy was due to his financial limitations.  *Id.*

The ALJ did not err in finding that Plaintiff's  non-compliance with postoperative treatment undermined the claim.  While Plaintiff told Dr. Gauttler that he was unable to afford the recommended physical therapy, Dr. Guettler's treating notes suggest that the failure to engage in therapy was due to motivational rather than financial problems (Tr. 276,

279, 402).  As noted by the ALJ, Dr. Guettler observed on multiple occasions that Plaintiff was non-compliant with recommendations for home exercise despite repeated encouragement and instruction (Tr. 30, 279).  Worse yet, the treating source opined in March, 2010 that Plaintiff "'was most interested in an off work note and pain pills'" (Tr. 30, 279).  Likewise, the ALJ did not err in pointing out that Plaintiff was non-compliant with medications (Tr. 28).  Treating records show that Plaintiff was cautioned against the continued overuse of Seroquel and sought treatment for a drug overdose (Tr. 343, 373-374).  August, 2009 hospital records show that he declined recommendations to undergo a spinal tap, but instead requested pain medication (Tr. 232).

### 4.  Plaintiff's Demeanor During the Hearing

Plaintiff also takes issue with the observation that he was able to sit comfortably through the administrative hearing, noting that he did not allege problems sitting and that the hearing lasted only 38 minutes.  *Plaintiff's Brief* at 14-15.  However, this argument is based on a distortion of the ALJ's findings.  The ALJ did not discount Plaintiff's claims on his ability to sit for 38 minutes, but rather, stated as follows:

> [Plaintiff] walked briskly into and out of the hearing in no apparent pain, yet reported that his father must do all the household chores and his girlfriend needs to assist showering him because he cannot do it alone.  While the hearing was short-lived and cannot be considered a conclusive indicator of [Plaintiff's] overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding [Plaintiff's credibility] (Tr. 27).

### 5.  The RFC

Plaintiff closes his credibility argument by contending that the sheer length and number of limitations found in the RFC support the conclusion that his allegations of limitations were credible.  However, he cites no authority stating that the ALJ cannot both

discredit   allegations of disability, but give plaintiff the benefit of the doubt by including some of the claims in the RFC.

For these reasons, the deference generally accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)).  *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) ( *citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

### B. Migraine Headaches

Plaintiff notes that while the ALJ found that migraine headaches were a severe impairment, he gave the condition short shrift in his analysis. *Plaintiff's Brief* at 15-16. Contrary to this argument, the ALJ devoted three single-spaced paragraphs to the migraine condition, noting that the condition responded well to Benadryl and Compazine (Tr. 28).  The ALJ also cited September, 2009 records showing that Plaintiff was prescribed migraine medication by Dr. Belkin (Tr. 29).  The ALJ correctly noted that objective and clinical testing were negative for a more serious neurological condition (Tr. 28-29).  While Plaintiff seems to imply that the ALJ did not factor limitations as a result of migraine headaches into the RFC, the limitation of simple, unskilled, low stress work with only occasional changes in the work setting (Tr. 25), coupled with Plaintiff's ability to control the migraines with medication, defeats this argument.

-16-

### C. Depression

Plaintiff argues next the ALJ discounted limitations as a result of depression. *Plaintiff's Brief* at 17-19. He disputes that the depression diagnosis was based only on his subjective complaints. He asserts that the ALJ erroneously concluded that the condition had resolved. *Id.*

This argument is not well taken. First, the ALJ acknowledged that depression created some degree of work related limitation by including it among the severe impairments at Step Two of the sequential analysis (Tr. 22). Second, the ALJ acknowledged Plaintiff's testimony that depression caused sadness, loss of appetite, and social isolation (Tr. 26). Although Plaintiff's testimony suggests that the condition was due to the temporary situational stressors of his mother's death and unemployment, the ALJ nonetheless accounted for the alleged psychological limitations by limiting Plaintiff to work requiring only occasional close proximity to coworkers, supervisors, and only occasional contact with the public in a "low stress" setting (Tr. 25, 32). Despite the restrictions found in the RFC, the ALJ reasonably found that the condition did not preclude work, and cited Plaintiff's September, 2009 statement to Dr. Belkin that he did not experience depression or anxiety (Tr. 31).

### D. Lower Extremity Conditions/Request for A Sentence Six Remand

Plaintiff also faults the ALJ for finding that "flat feet" were a severe impairment, but omitting further discussion of the condition. *Plaintiff's Brief* at 19-22. He argues that the ALJ erred by failing to develop the record as to limitations as a result of flat feet. *Id.* He claims that he "attempted to cure that deficiency" by obtaining a foot and ankle examination in January, 2011. *Id.* at 20. Plaintiff argues that the January, 2011 examination notes (discussed above in "Background Facts," Section **B. 3.**) would be likely to change to ALJ's decision. *Id.* at 20-21. He argues that the new material provides grounds for a "Sentence

-17-

Six" remand.

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g).

Plaintiff cannot show that these records are material to the ALJ's decision. First, records pertaining to a claimant's condition subsequent to the date of the administrative decision are irrelevant to the period ending on November 18, 2010. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). If Plaintiff believes that he can establish disability for a period postdating the November 18, 2010 decision, he is not barred from making a new application for benefits. *Id.*

Second, even assuming that the January, 2011 records are probative of Plaintiff's earlier condition, the one-time examination notes do not establish or suggest greater limitations that those in the present RFC. While the examination yielded a positive Tinel's sign, Plaintiff also exhibited 5/5 muscle strength, normal motor activity, and the absence of arthritis. *Docket #16-1.* Plaintiff does not state how, if at all, Dr. Tisdel's findings would change the present RFC limiting walking to four hours a day "for only one-half hour at a time" (Tr. 24). While the January, 2011 records state that nerve conduction studies were planned, Plaintiff's exhibit does not contain the results of the study, Dr. Tisdel's diagnosis, or what followup treatment, if any, occurred.

In addition, Plaintiff cannot establish "good cause" for the failure to submit records regarding the foot condition prior to the administrative decision. Plaintiff characterizes the newly submitted material as an "attempt[] to cure" the ALJ's "error" in failing to develop the

-18-

record.  However, he provides no cause for his own failure to obtain treatment or a consultative examination to assess the condition before the November, 2010 decision. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. March 13, 2009) (citing *Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)); *See also Ledford v. Astrue,* 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir.December 19, 2008) (citing *Martin v. Commissioner of Social Security,* 170 Fed .Appx. 369, 374–75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)).

Further, the ALJ's inclusion of "flat feet" among the severe impairments appears to be based exclusively on Plaintiff's application listing "flat feet" as one of his conditions and the testimony regarding foot pain (Tr. 22, 177).  The ALJ's "failure" to discuss the condition further appears to be based on the lack of any treatment for the condition.  Although the medical transcript shows that Plaintiff sought aggressive and frequent treatment for a number of conditions, he did not seek any treatment for the alleged foot pain.  Nonetheless, the ALJ credited Plaintiff's allegations of foot pain by limiting him to four hours walking each day for no more than half an hour at a time (Tr. 24).  Because none of the records before the ALJ or the January, 2011 records show greater limitations than those found in the RFC, a remand under either the fourth or sixth sentence of 42 U.S.C. § 405(g) is not warranted.

### E.  Weight Accorded to the Non-Treating Source

Finally, Plaintiff criticizes the weight accorded William Lockhart's December, 2009 Physical Residual Functional Capacity Assessment, noting that the ALJ acknowledged that "'it is not clear that Mr. Lockhart [was] an acceptable medical source.'" *Plaintiff's Brief* at

22-23 (citing Tr. 31). Plaintiff argues that although the ALJ accorded Lockhart's opinion "only little weight," the non-examining assessor was not entitled to *any* weight pursuant to POMS DI 24510.050C. *Id.* at 23.

Plaintiff is correct that it is not clear whether Lockhart's assessment constitutes opinion evidence. However, the ALJ's discussion of the assessment, read in context, indicates that he gave no weight to the Lockhart's December, 2009 conclusions. After noting that it was unclear whether Lockhart was an acceptable medical source, the ALJ cited Lockhart's finding that Plaintiff could lift up to 20 pounds and walk for up to six hours in an eight-hour workday (Tr. 31). The ALJ noted that the findings were undermined by the fact that Lockhart did not have benefit of the later treating records (Tr. 31). While the ALJ stated that he gave the assessment "only little weight," in fact, he did not adopt *any* of Lockhart's findings. For example, while Lockhart found that Plaintiff was able to lift up to 20 pounds and walk for up to six hours a day (Tr. 262), the ALJ limited Plaintiff to 15 pounds lifting and walking four hours a day with breaks every half hour (Tr. 24). While Lockhart found the absence of postural, manipulative, and environmental limitations (Tr. 263-265), the RFC includes extensive postural, manipulative, and environmental restrictions (Tr. 24-25). Because in reality, the ALJ did not adopt any of Lockhart's findings, his statement that he gave them "only little weight" (assuming that the phrase can be interpreted to state more than negligible) does not provide grounds for remand.

In closing, I note that while the appeal of the Commissioner's decision has been aggressively argued, Plaintiff has not presented a particularly strong case for benefits. His testimony that he stopped working on July 6, 2007 because his job was terminated undermines his claim that he became "disabled" as of that date (Tr. 48). As noted by the ALJ, the treating records suggest that Plaintiff lacked motivation to resume work. The dearth

of treating records between July, 2007 and August, 2009 also cast doubt on Plaintiff's claim that he was disabled as of July, 2007 as well as his allegations of limitation from August, 2009 forward.     The ALJ's well-reasoned decision contains a thorough analysis of the medical and other evidence, including the wide disparity between Plaintiff testimony that he was unable to perform any household activities and the self assessment completed at the time of the application (Tr. 26, 188-189).  Because the  determination was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level,  it should not be disturbed by this Court.   *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and  that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within

 the objections.


Dated: February 26, 2014                    s/R. Steven Whalen_____
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on
February 26, 2014, electronically and/or by U.S. Mail.

                                            s/Michael Williams_____
                                            Case Manager for the
                                            Honorable R. Steven Whalen